[Civ. No. 32370.   Second Dist., Div. Four.   Dec. 31, 1968.]

FLINTKOTE COMPANY, Plaintiff and Respondent, v. LISA CONSTRUCTION COMPANY et al., Defendants and Appellants.

Gainsley, Winkler, Kaufman & Ward and Benjamin P. Riskin for Defendants and Appellants.

Edward Clayton Jones for Plaintiff and Respondent.

DUNN, J.—Defendant Lisa Construction Company is a joint venture composed of codefendants Violet Estates Incorporated and Sands Homes Incorporated. Lisa was the owner of Lots 1 through 10, inclusive, of Tract 21769 in Northridge, Los Angeles County. Lisa acted as its own general contractor in developing the property, building a residence on each of the ten lots. Most of the work was done by subcontractors. On June 7, 1963, Lisa made a written contract with The Shiffman Company whereby Shiffman agreed to install the concrete foundations for the residences at a price of $1,200 per unit. It provided for progress payment to be made by Lisa to Shiffman in usual fashion and that payment checks would be issued by Lisa payable jointly to Shiffman and its material supplier.

In 1963, Shiffman was the foundation subcontractor for a number of other projects obtaining necessary cement and reinforcing steel from plaintiff herein, The Flintkote Company doing business as "Blue Diamond Company." Shiffman secured cement and steel for the Lisa contract from plaintiff. Plaintiff furnished the materials to Shiffman under an open book account, the cost of materials used on the job being $7,108.76. The price was computed and determined in the aggregate and as a total sum. There was no agreement between plaintiff and Shiffman as to the amount or value of materials that would be used in the construction of any specific lot or improvement. The materials were delivered to the tract in the aggregate and without reference to any lot or improvement. All of the materials were used in construction of the concrete foundations for the 10 houses.

Shiffman completed its work under the Lisa contract between September 9 and October 29, 1963. Before October 29th defendants paid Shiffman all sums due under its subcontract making its checks payable to Shiffman, alone. However, Shiffman never paid to plaintiff the amount owing for the materials mentioned.

The plaintiff had no knowledge of the agreement between Shiffman and defendants. Similarly, defendants were unaware that plaintiff furnished materials to the jobsite until receiving

from plaintiff the statutory preliminary notice given January 6, 1964, pursuant to Code of Civil Procedure, section 1193 (as it then read). Thereafter, and within the time provided by the Code of Civil Procedure, section 1193.1, plaintiff gave notice of its claim of lien and recorded it January 24, 1964.

In its complaint filed April 16, 1964, plaintiff sought to impose and foreclose its mechanic's lien on the 10 lots mentioned. On May 1, 1964, it recorded its ''Notice of Pendency of Action to Foreclose Materialman's Lien.'' Defendants had sold five of the lots to individual purchasers who had recorded their deeds before the complaint was filed. None of these purchasers was named as a defendant in the complaint, however, and the judgment excluded the lots from the lien. The trial court found plaintiff was entitled to a lien upon the remaining five lots for the total value of the materials furnished by plaintiff for use upon the project. These five lots had been sold by the defendants, through escrows after the complaint was filed, four of them being conveyed after lis pendens recordation. As part of its judgment the court decreed that these properties could be sold by the sheriff at public auction, the proceeds to be used in satisfaction of judgment.

▪ Defendants' first ground of appeal is based upon Code of Civil Procedure sections 1194.1 and 1195.1. Code of Civil Procedure section 1195.1 states that if a work of improvement ''. . . consists in the construction of two or more separate residential units, each such unit shall be considered a separate 'work of improvement' or 'improvement.' . . . Materials delivered to or upon any portion of said entire work of improvement or furnished to be used in said entire work of improvement and ultimately used or consumed in one of such separate residential units shall, for all the purposes of this chapter, be deemed to have been furnished to be used or consumed in the separate residential unit in which the same shall have been actually used or consumed; provided, however, that if the lien claimant is unable to segregate the amounts used on or consumed in such separate units he shall be entitled to all the benefits of Section 1194.1 of this code.''

Code of Civil Procedure section 1194.1 reads, in part: ''(a) In every case in which one claim is filed against two or more buildings . . . or other improvements owned . . . by the same person . . . the person filing such claim must at the same time, designate the amount due to him on each of such buildings . . .; otherwise the lien of such claim is postponed to other liens.''

Appellants claim that the work of improvement consisted of constructing 10 single-family residential units on 10 separate lots, and that each unit was to be built under the same floor plan and specifications. Appellants would infer that the materials furnished by plaintiff were apportioned equally between the 10 foundations, and then rely upon the phrase in Code of Civil Procedure, section 1194.1, that: "In every case in which one claim is filed against two or more buildings . . . , the person filing such claim *must* at the same time, designate the amount due to him on each of such buildings. . . ." (Italics added.) Absent such designation, appellants claim the lien must fall.

To be noted in response is the further language of Code of Civil Procedure, section 1194.1, that ". . . otherwise the lien of such claim is postponed to other liens." This is the only penalty on a claimant who fails to designate the amount due to him on each building or improvement, where such designation is possible. Secondly, there is no evidence that respondent was aware of the terms of the contract between appellants and Shiffman. It is clear from the record that construction of all 10 houses was undertaken simultaneously and was treated by Shiffman as one job or project. Shiffman kept a single set of ledger pages and made no attempt to allocate costs of materials. Respondent made deliveries to the jobsite and submitted invoices for each day's deliveries, making no effort (and, indeed, having no basis) to designate materials for use in one particular foundation or the other. The findings of the trial court in that respect are amply supported by the evidence.

Third, appellants' interpretation of the code section is contrary to precedent. In *Kritzer* v. *Tracy Engineering Co.* (1911) 16 Cal.App. 287 [116 P. 700], a judgment foreclosing a mechanic's lien was sustained. The plaintiff had been employed as a foreman-superintendent on the construction of buildings on two jobs, nine miles apart, being a mine and millsite. His work was done under a single contract, and it was the defendant's contention that Code of Civil Procedure section 1188 (now § 1194.1) required plaintiff to designate the amount due to him for his supervisorial work on each project. In disagreeing with this position, the court noted that it was impossible for him to so segregate his labors and went on to state (p. 292) : ". . . Moreover, even if this was not true, and conceding the work was done upon distinct and separate properties under separate contracts, nevertheless, since there were no other lien claimants, whose rights could be affected, it

was not a matter which concerned defendant as owner of the property, and hence, in no event, has it a cause for complaint.''

This ruling has been cited approvingly in *Vowels* v. *Witt* (1957) 149 Cal.App.2d 257, 264 [308 P.2d 415] and *Pugh* v. *Moxley* (1912) 164 Cal. 374, 376-377 [128 P. 1037]. In *Hendrickson* v. *Bertelson* (1934) 1 Cal.2d 430 [35 P.2d 318], the court stated (p. 433) : ''While section 1188 does provide that where a claim of lien is filed against two or more buildings, the lien claimant must, at the same time, designate the amount due on each of such buildings, it has been held not to require impossibilities, and that 'the only effect of a failure to designate the amount due on each of two or more structures for which one claim is filed is to postpone the lien to those of other claimants.' ''

Appellants' reliance upon *Stimson etc. Co.* v. *Los Angeles Traction Co.* (1903) 141 Cal. 30 [74 P. 357], *Nevada County Lbr. Co.* v. *Janiss* (1938) 25 Cal.App.2d 579 [78 P.2d 200], and *Borchers Bros.* v. *Buckeye Incubator Co.* (1963) 59 Cal. 2d 234 [28 Cal.Rptr. 697, 379 P.2d 1], is not well founded.

■ Appellants next contend that the interests of third parties who purchased the five lots upon which foreclosure was ordered should be adjudged unaffected by the present action. They point out that these five purchasers were not made parties to the action and claim that when, at pretrial, the action was dismissed as to fictitious defendants, such acted as a cancellation of the effect upon them of the notice of lis pendens.

Appellants observe that the present action was filed April 16, 1964, that the notice of lis pendens was not recorded until May 1, 1964, and that the deed to Lot No. 1 was recorded April 23, 1964, after the filing of the complaint but before filing of the notice. However, the deeds from appellants to the grantees of Lots Nos. 6, 8, 9 and 10 all were recorded after the notice was filed.

Defendants cite *Olson* v. *Cornwell* (1933) 134 Cal.App. 419 [25 P.2d 879], as authority for their contention that the dismissal of fictitious defendants destroyed the effect of the notice. There, the evidence established the settlement of an earlier quiet title suit by contract executed August 8, 1927, but not recorded until June 29, 1928. In the interim, the record owner of the property had executed a trust deed recorded September 6, 1927. The earlier quiet title action was dismissed when the case was settled, and it was held such

dismissal terminated the lis pendens. That case is to be distinguished from the present one. Here, the action was dismissed only as to fictitious defendants, and not as to defendants who appeared and answered, namely, appellants herein. It should not be incumbent upon a plaintiff to initiate a continuing title search to the time of trial or pretrial in order to determine if a defendant conveyed property after lis pendens is recorded. Rather, the grantees who record thereafter are on notice of a plaintiff's mechanic's lien and must govern themselves accordingly. (Code Civ. Proc. § 1198.2.)

The foregoing does not consider the transfer of Lot No. 1 since that deed was recorded after the present lawsuit was filed but before May 1, 1964. Appellants contend that, in any event, the judgment should be reversed as to Lot No. 1.

Code of Civil Procedure section 1193 places on a materialman the obligation to serve a property owner with a preliminary notice not later than 15 days prior to filing a more formal claim of lien. Filing of the latter is governed by Code of Civil Procedure section 1193.1 and duration of the lien provided for by statute is limited. Code of Civil Procedure section 1198.1 fixes its lifetime at 90 days ". . . unless within that time, proceedings to enforce the same be commenced in a proper court."

The statute is silent as to parties required to be named and served. Thus, is it necessary to name and serve the purchaser of property who records his title after the lien attaches but before suit is filed? This is answered in the affirmative in *Packard Bell etc. Corp.* v. *Theseus, Inc.* (1966) 244 Cal.App. 2d 355 [53 Cal.Rptr. 300] wherein the court, quoting from an earlier decision, states (p. 360): " ' ' ''Though the lien of mechanics is purely the creature of the statute, a decree for the sale of the premises in its enforcement has the same and no greater effect upon the rights of purchasers and encumbrancers prior to the commencement of suit, than a similar decree would have upon the foreclosure of a mortgage. If such purchasers or encumbrancers are not made parties, they are in no respect bound by the decree or proceedings thereunder.'' ' '' As the record owners of the five lots exempted from the court's judgment were not made parties to the action filed by respondents here, the liens expired as to them within the 90-day period specified in Code of Civil Procedure, section 1198.1.

But the recording of the new title to Lot No. 1 occurred *after* the suit was filed. Such filing, alone, is not sufficient to

put the purchaser upon constructive notice of the suit to fore-close. Code of Civil Procedure, section 1198.2 provides for filing notice of the pendency of an action and states: ". . . Only from the time of filing such notice for record, shall a purchaser . . . of the property affected thereby be deemed to have constructive notice of the pendency of the action. . . ."

To defeat the lien, however, a purchaser after the filing of a suit must be bona fide in his claim of ignorance and inno-cence. Proof of actual, as distinguished from constructive, notice of the lien would show him to be no innocent purchaser for value. And he is not a party indispensable to the action since he was not the record owner at the time the suit was filed. The record owner of Lot No. 1 at that time was Lisa, appellant herein.

As noted in *Packard Bell, supra,* (p. 364) : "Thus to deny to plaintiff a decree of foreclosure against the defendant who was the owner of the property at the time the action was commenced would be to shut plaintiff out from the opportu-nity to enforce a possibly existent right against the persons who purchased during the pendency of the action. Such per-sons were not indispensable parties . . . while the defendant Theseus, Inc. was an indispensable party, having been the owner at the time the action was commenced. . . . A decree of foreclosure should be granted against a former owner who was a proper party defendant at the time of the commencement of the action, although he was at the time of the trial and decree no longer owner. . . . It must be held that if any of the purchasers who acquired title after the action was commenced acquired such title with knowledge of the pendency of the action, they might be bound by a decree of foreclosure against defendant Theseus, Inc. It is proper, therefore, that a decree of foreclosure as to the rights of the defendant Theseus, Inc. should be entered, which should make it clear that the decree does not foreclose the interest of any person not a party to the action who purchased before recording of the notice of lis pendens and who did not have actual knowledge of the pen-dency of the action at the time of acquiring title."

In our case the judgment entered in respondent's favor specifically provided that a sheriff's sale would bar only those persons claiming subsequent title who had ". . . actual or constructive notice of the commencement of this action . . .". From this, it is apparent the judgment does not pre-clude the present owners of Lot No. 1 from contesting the sale

of such lot whenever the same may occur; nor does it preclude them from an action to quiet title or other form of relief.

■ Appellants' final contention is that plaintiff is estopped from claiming a lien upon any of the properties, relying upon *R. D. Reeder Lathing Co., Inc.* v. *Allen* (1967) 66 Cal.2d 373 [57 Cal.Rptr. 841, 425 P.2d 785], and *Jaekle* v. *Halton* (1938) 25 Cal.App.2d 706 [78 P.2d 441]. While the appellants' pleading of estoppel is somewhat deficient, both parties to the action apparently assume it was raised by the allegations of paragraph VII(c) of the answer. Appellants overlook the fact that evidence was offered on this issue by both sides and the trial court specifically found against them. Since the findings are supported by substantial evidence, this court may not disagree with the trial judge. Additionally, the *Reeder* case is not supportive of defendants' position. There, a motion for summary judgment in favor of the plaintiff had been granted. The holding of the Supreme Court is merely to the effect that questions of fact were presented and could be resolved only by a trial.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 26, 1969.